```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :
UNITED STATES OF AMERICA,     :
                              :
            Plaintiff,        :      03 Cr. 1150 (LAP)
                              :
     v.                       :      OPINION AND ORDER
                              :
                              :
DAVID E. WEXLER,              :
                              :
            Defendant.        :
                              :
------------------------------x
```

LORETTA A. PRESKA, U.S.D.J.:

      David E. Wexler ("Defendant") moves for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. On February 18, 2005, a jury found Defendant guilty of, <u>inter alia</u>, conspiring to violate the narcotics laws of the United States as charged in Count One of the indictment. In a special verdict, the jury found that the narcotics conspiracy charged in Count One resulted in the death of Barry Abler, who overdosed on the narcotic Dilaudid and who received several Dilaudid prescriptions from Defendant. Defendant argues that the death of Barry Abler could not have resulted from the charged narcotics conspiracy because there was insufficient evidence for a rational jury to find that such a conspiracy existed with respect to Dilaudid. For the following reasons, Defendant's motion is denied.

BACKGROUND

Defendant's trial commenced on February 7, 2005. On February 18, 2005, the jury found Defendant guilty of, <u>inter alia</u>, conspiring to violate 21 U.S.C. § 841(a)(1), which makes it unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The narcotics conspiracy lasted from approximately 1992 through January 2002 and had four objects: distribution of and possession with intent to distribute the narcotics known as Dilaudid, Percocet, Vicodin, and Xanax. The Dilaudid object of the conspiracy set forth in paragraph two of Count One reads:

> It was a part and an object of said conspiracy that DAVID E. WEXLER, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, Hydromorphone, commonly known as "Dilaudid," a Schedule II controlled substance, in violation of Sections 812, 841(a)(1) and 841(b)(1)(C) of Title 21, United States Code, which resulted in death.

Among the overt acts charged in the Count One conspiracy with respect to Dilaudid are: distributing 120 pills of Dilaudid to Barry Abler on September 23, 1999, distributing 120 pills of Dilaudid to Barry Abler on March 10, 2000, distributing 120 pills of Dilaudid to Barry Abler on April 10, 2001, and

2

distributing 120 pills of Dilaudid to Barry Abler on May 19, 2001.

The special verdict the jury reached--that the narcotics conspiracy caused the death of Barry Abler--is rooted in section 841(b)(1)(C) of Title 21 of the United States Code, which provides:

> [i]n the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance [such person] shall be sentenced to a term of imprisonment of not less than twenty years or more than life.

21 U.S.C. § 841(b)(1)(C).

Section 846 of Title 21 of the United States Code makes applicable to Defendant the penalty provided for by § 841(b)(1)(C). 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."); see 21 U.S.C. § 841(b)(1)(C).

The jury also found Defendant guilty of, inter alia, four counts of distributing Dilaudid to Abler, conspiracy to commit health care fraud, and various substantive heath care fraud counts. On April 1, 2005, Defendant filed the present motion for a judgment of acquittal.

DISCUSSION

I. The Standard

Defendant moves for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Rule 29 provides:

> (1) A defendant may move for a judgment of acquittal . . . within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7-day period.
> (2) If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.

Fed. R. Crim. P. 29(c) (2005).

A defendant who challenges the sufficiency of the evidence post-verdict "bears a heavy burden." United States v. Finley, 245 F.3d 199, 202 (2d Cir. 2001). The evidence must not only be viewed in the light most favorable to the Government, but all possible inferences must be drawn in the Government's favor. See United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003); United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999)(citing United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996)). Moreover, "the jury verdict must be upheld if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Jackson, 335 F.3d at 180 (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis added).

II. Application

Defendant asserts two grounds for acquittal. First, Defendant argues that the relationship between Defendant and Abler was that of buyer and seller with respect to Dilaudid and, therefore, cannot be the basis for the conspiracy that resulted in the special verdict. Second, Defendant contends that because Abler died from a Dilaudid overdose, the jury must have been unanimous with respect to the Dilaudid object set forth in paragraph two of Count One. Defendant argues that "according to the evidence, no Dilaudid was distributed to Abler and further distributed by him." Def. Mem. at 3.[1] Thus, Defendant argues that the evidence cannot support a conviction for conspiracy to distribute Dilaudid and, in turn, the special verdict cannot stand because the "count specifically alleged that Abler's death resulted from a conspiracy to distribute Dilaudid." Id. at 5.

Defendant's first argument is that with respect to Dilaudid, the relationship between Abler and Defendant was that of buyer and seller, not of co-conspirators. A conspiracy to distribute narcotics cannot be found when the relevant relationship is only that of a buyer and seller. United States v. Gore, 154 F.3d 34, 40 (2d Cir. 1998); United States v. Valencia,

---

[1] "Def. Mem." refers to Defendant's Memorandum of Law in Support of Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c) submitted on April 1, 2005.

5

226 F. Supp. 2d 503, 510 (S.D.N.Y. 2002) ("[T]he mere purchase and sale of narcotics, without more, does not constitute a conspiracy to distribute narcotics."). To demonstrate such a buyer-seller relationship, which usually involves a casual sale of a small quantity of drugs, there must be no evidence of the parties' awareness of, or involvement in, a larger conspiracy. United States v. Medina, 944 F.2d 60, 65 (2d Cir. 1991). Compare United States v. Morris, 836 F.2d 1371, 1374 (D.C. Cir. 1998) (finding a buyer-seller relationship based on the Government's proof that defendant sold only three ounces of PCP to his co-defendant on two separate occasions), and United States v. McIntyre, 836 F.2d 467, 472 (10th Cir. 1987)(acknowledging a buyer-seller relationship where the Government "failed to show any common goal or larger scheme beyond each single transaction in which defendant possessed cocaine and distributed it to those who happened to be at the sale."), with Valencia, 226 F. Supp. 2d at 511 (refusing to find buyer-seller relationship where defendant was negotiating to sell two or three kilos of cocaine and was found in possession of approximately one kilo), aff'd, 100 Fed. Appx. 17 (2d Cir. 2004). "'The purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy.'"

6

<u>Valencia</u>, 226 F. Supp. 2d at 510 (quoting <u>United States v. Ivy</u>, 83 F.3d 1266, 1285-86 (10th Cir. 1996)).  Factors that tend to "shed light on whether the parties to a sale of narcotics are merely buyer and seller or instead are co-conspirators" are:

> the period of time over which the buyer and seller transact business, the method by which the buyer pays for the narcotics, the quantities of drugs involved, whether the transactions were standardized in some way, and whether or not there was a mutual trust between the buyer and seller.

<u>United States v. Thomas</u>, 284 F.3d 746, 752 (7th Cir. 2002).

Here, there is ample evidence from which the jury could have found that the relationship between Abler and Wexler was not that of buyer and seller but rather that of co-conspirators.  In contrast to a one-time transaction involving narcotics, the relationship between Defendant and those to whom he sold narcotics during the course of the conspiracy charged in Count One, including Abler, lasted some eight years. Kravitz Tr. 217.[2]  In addition, the Dilaudid prescriptions Defendant provided to Abler were part of a larger conspiracy to distribute several different narcotics, not just Dilaudid and not just on a buyer-seller basis.  For example, Steven Kravitz testified that Defendant gave prescriptions to Abler so Abler could "make extra money selling the prescriptions." Kravitz Tr. 220.  Kravitz also

---

[2] "Kravitz Tr." refers to the transcript of the testimony of Steven Kravitz given at trial on February 9, 2005.

7

testified that Defendant wrote a large number of prescriptions for a variety of narcotics in the names of other individuals for Abler to sell, Kravitz Tr. 220-22, and that Defendant wrote these illegal narcotics prescriptions on at least a monthly basis, Kravitz Tr. 221. The drug quantities were substantial, that is, more than the minimal amounts involved in cases found to be within the buyer-seller rule. Indeed, the quantities of Dilaudid Defendant distributed to Abler alone were substantial. Also, at least Defendant, Abler, and Kravitz were all aware of and participants in the conspiracy to distribute narcotics charged in Count One. The evidence easily showed that Defendant wrote prescriptions on demand for Abler, Kravitz and others and that they, in turn, did not object when notified that Defendant had billed their insurance carriers for hundreds of procedures that he did not perform. Thus, as Abler recruited Kravitz and others to participate actively in the narcotics conspiracy and health care fraud, a mutual trust developed between Defendant and Abler. Kravitz Tr. 221. Thus, the relationship between Defendant and Abler was part of a larger scheme involving narcotics distribution to facilitate health care fraud. The limited buyer-seller rule does not apply to the instant facts and, therefore, cannot form the basis for acquittal.

Defendant also contends that the evidence introduced at trial was insufficient to prove that Defendant conspired with

8

Barry Abler to distribute Dilaudid and, therefore, the conspiracy could not have resulted in the Dilaudid-induced death of Barry Abler. Defendant argues that the special verdict must be overturned because no evidence was introduced to demonstrate that Abler distributed or intended to distribute the Dilaudid prescribed by Defendant. The Government asserts in response that the death resulted from the narcotics conspiracy as a whole and that it is not necessary to link the death with any specific object of the conspiracy.

Although Defendant does not support his argument with a rule or case on point, his argument is analogous to that made by the defendant in United States v. Orozco-Prada, 732 F.2d 1076 (2d Cir. 1984). There, the defendant appealed his sentence for a narcotics conspiracy that had two objects--distributing cocaine and distributing marijuana. Id. at 1083. The defendant argued, and the Court found, that "in the absence of a special verdict, there was no way for Judge Goettel to know whether the jury intended to convict Eduardo Orozco for a cocaine-related conspiracy, for a marijuana-related conspiracy, or for a conspiracy involving both drugs." Id. Consequently, the Court remanded for either resentencing or a new trial.

Although the jury in this case was not asked to indicate which object or objects of the narcotics conspiracy the Government proved, the jury did return a special verdict finding

9

that "the narcotics conspiracy charged in Count One result[ed] in the death of Barry Abler." Verdict Form. Unlike the situation in Orozco-Prada, the special verdict that the narcotics conspiracy caused the death of Abler made plain the jury's intention to find unanimously that the Government proved the Dilaudid object of the narcotics conspiracy because it was established at trial that Abler died of a Dilaudid overdose. Steven Kravitz testified that Defendant gave prescriptions to Abler so Abler could "make extra money selling the prescriptions." Kravitz Tr. 220. Kravitz also testified that Abler "received Dilaudid, Soma, and Vicodin" from Wexler. Kravitz Tr. 221. At oral argument, defense counsel cited Kravitz's testimony that he "believe[d] Vicodin and Soma" were the prescriptions Wexler gave Abler to sell to others as conclusive evidence that Abler did not distribute, or possess with the intent to distribute, Dilaudid. See Kravitz Tr. 222; July 19 Tr. 17:12-16.[3] However, "a conviction should not be vacated under Rule 29 simply because the government's case is based on circumstantial evidence and the defendant is able to present an equally plausible, innocent explanation of that evidence." United States v. Reinhold, 20 F. Supp. 2d 541, 553 (S.D.N.Y. 1998).

---

[3]"July 19 Tr." refers to the transcript of oral argument held on July 19, 2005.

Contrary to Defendant's counsel's position at oral argument, Kravitz's testimony did not limit the prescriptions Abler distributed to Vicodin. The testimony referred to was as follows:

> Q: Did Barry Abler ever tell you why the defendant gave him prescriptions in the names of other people?
> A: To make money
>
> Q: What, specifically, did Barry Abler tell you about that?
> A: He said that Dr. Wexler offered to write as many prescriptions as he wanted so Barry could make extra money selling the prescriptions.
> . . .
> Q: What prescriptions did he tell you he received from Dr. Wexler?
> A: He received Dilaudid, Soma, and Vicodin.

Kravitz Tr. at 220-21. Kravitz was not asked if these were the only prescriptions Abler distributed. Drawing the inferences in favor of the Government, as I am required to, Kravitz's testimony constitutes a non-exclusive list of the prescriptions Abler passed on.

The Court of Appeals has expressed the importance, especially in conspiracy cases, of viewing pieces of evidence not in isolation but in conjunction with each other. United States v. Casamento, 887 F.2d 1141, 1156 (2d Cir. 1989) (citing United States v. Young, 745 F.2d 733, 762 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985)). Contrary to the Court of

11

Appeals' injunction, Defendant's arguments seek to isolate Defendant's handing of a prescription for Dilaudid to Abler from the context in which the handing over took place, that is, in the context of a multi-year, multi-member conspiracy to distribute substantial, non-personal use quantities of a variety of drugs. This context, easily supported by the evidence, may not be ignored.

Having viewed all of the evidence in a light favorable to the Government and drawing all fair inferences in favor of the Government, United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003), I find that there was sufficient evidence for the jury to have found that the narcotics conspiracy charged in Count One caused the death of Barry Abler. See United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994).

## CONCLUSION

For the reasons stated above, Defendant's motion for acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure is denied.

SO ORDERED:

Dated:   New York, New York
         October 31, 2005

*Loretta A. Preska*
LORETTA A. PRESKA, U.S.D.J.